May it please the court and counsel. We're here today to resolve what started with a summons that was issued by the IRS and served on Titan to produce for inspection 2009 books and records. Titan responded to that by way of correspondence to the service, specifically taking issue with the fact that the summons was a second, a request for a second inspection of those and seeking from the service then the notice required by 7605B, from the Secretary of the Secretary's delegate. That response is set forth in Exhibit A to our response to the petition to enforce the settlement. The service then followed them with the petition to, I mean, enforce the summons, petition to enforce the summons and the district court ordered that we Titan respond to the summons and file any motions. Titan did respond and their response included affidavits as well as they filed a motion to quash the court, upheld the position and denied the motion. So the issue we're confronted with and that brings us today is, does the summons that was issued amount to a second inspection requiring a 7605B notice? Are you arguing that the IRS gets only one bite at the apple to determine if a deduction is correct, even if that deduction applies for years after its claim? I, we are arguing that they know they can get a second bite at the apple, your honor, but they need to take the appropriate steps to do that. And in this case, as in those cases where they want the second bite, the statute is very clear. They need to get the notice from the secretary and serve it. And the Powell decision makes, explains exactly why that is and provides support. But you agree that the IRS can look at previously audited years for some information? Yes, they can. In fact, if our issue, if they gave us the notice, we would have provided the documents. So we're not saying that they never get a second bite at the apple. What we're saying, which is consistent with Powell, that the steps they need to, their burden to show that the summons is issued is that they, the documents are necessary, that these documents are responsive to that necessity, that they don't have them, and that they follow the procedures. The issue here is that they did not follow the procedure. 7605B. What procedure did they not follow? They did not provide Titan with a, they did not what? Provide Titan with a notice from the secretary as required under 7605B2. Because it is, it is a second inspection of the 2009 records to support the carry forward laws. So that's the issue. But if they're records from an already examined year and they're being sought, that doesn't qualify as a second inspection, does it? If the IRS has already inspected those records, they've looked at those records, they've done a calculation, they've verified that number, and then they want to come back the next year and essentially re-verify that same number by looking at the same records, that is a second inspection. And that's what we have here. The number there, I mean, they say in their brief that they just want to verify the net operating loss in 2009. Well, that number, it's the same number on 10, the 2010 return is on the 2009. They have already verified. So why do you care? I don't understand. Well, because there's procedures that afford the taxpayers. I mean, what's the harm? What's the harm to you? Well, quite frankly, we don't think that the secretary will give them the notice, your honor. There's proceed. We don't think they want to go ask the secretary for the notice required by 7605B. And we are entitled to have them provide that notice. They didn't write a letter saying it's necessary? No, I'm not saying that they didn't write a letter that's necessary. I'm saying the secretary of the treasurer or its delegate did not. We have the lower echelon IRS agents as referenced in the Pell. Will you expect the secretary of the treasury to be writing letters to individual taxpayers? I have no doubt the secretary of treasurer does not, but the statute provides for the secretary or the secretary's delegate. Well, the junior person who wrote you is not the case, your honor. But why do you care? If all they're asking for is something they already have, doesn't make a lot of sense, but it doesn't hurt you, what are you worried about? Just be worried about something. Well, I don't have something to hide. We don't have something to hide. Then why aren't, why are you litigating this if you have nothing to hide? The IRS. You're spending money litigating for what? What are you trying to get? We're trying, the IRS in 2009 audited Titan. They went through the books, they made a reduction in the carry forward. We resolved that, accepted their instructions, it went up to the Joint Commission on Congress for approval. We've already done that. We're not trying to hide anything from that, but we have the rights of the statute to protect us from having to put that forward again. It's not that, it's going to take us time to do what? If they're going to come back and re-inspect all the documents that they've already inspected to calculate the same number that they've already calculated. Yeah, so that sounds like a waste of time. What's the harm to Titan? It's not without. You're spending money on litigation, now why? What, what, what is it, what are you afraid of? We're not, we're not afraid, your honor. If you're not afraid to fight the IRS. We must have something to lose or hide. We're seeking to, Judge, prevent us spending time and money with their auditor rehashing things that we've already went through and agreed to. This is a net operating loss. That's correct. Issue. Okay, and when it's, for example, if it's calculated in year zero, it carries the deduction into later years. So if Titan wants to claim the deduction, it's, they have a calculation for inspection as a basis for the later years. And when you do that, you don't have to have, IRS doesn't need notice from the secretary if they're doing it to determine a tax liability for a later year. When they have already inspected that, and the difference here is that the, if this were a number, this net operating loss number was a number first appearing on the 2010 return, and it actually is calculated by using records from prior years and things, that would be true. That's, but this is not a number that's first appearing on the 2010 return. It's first appearing on the 2009 return. Exactly. There's no future events that happened in 2010 that go into this number, and they've already looked at it. It's been adjudicated, negotiated, and that operating loss, they're entitled to look at subsequent years, and so you're saying they can't go back and look at that and make sure that was okay, the 0-9 calculation, without even notice? We're saying they've already done it. We have to, the law requires us to prove that loss. We did it. We had the burden to prove it. We met that burden. That was in 0-9. Had they not audited 0-9 and looked at all that and done all this, then that would be fine, but they don't get to come back and re-evaluate the same books and records to come look at the very same. Well, they do if they write their necessary letter, right? That's correct. That's absolutely correct. And how would that make you happy to have a necessary letter? Pardon? How would it make you happy to have a necessary letter? Because then they will have complied with the requirements that the law has on that they follow the It sounds as if you're just fussing over something of absolutely no significance. Well, Judge, I think the requirements that the statutes and courts impose on the IRS provide protections that the taxpayers are entitled to take advantage of. Protection against what? Protection against a second inspection of the same records when we've already been through this with them once. Well, I assume you also seek to avoid a further reduction in the net operating loss, right? Wasn't it reduced the first time around when this was originally audited? Yes, yes. And you don't want any further reduction? Well, yeah, we don't think that they can even inspect it, but I mean it's... Right, but that's the point of, you know, this erecting this firewall against an additional inspection by invoking the statute is because you don't want any further reductions? You're right. We don't want any further reduction. The reduction, we agreed to a reduced reduction before and the Congressional Committee approved it. So now, and I think their response said, oh well, we're not going to seek an additional assessment against them. And this is where Judge Mills got off track and I think the error in his ruling because he found on the basis that since they weren't going, they indicated their therefore what doesn't qualify as a second inspection. So if you, so can they issue this letter now or is it too late? I think they would, well yeah, I think if they come back and issue the letter now, they can issue it. Yeah, if this court says that summons is quashed, the motion to quash is granted, the petition is denied. Then what will you have gained if they do send a letter? We will gain that they followed the correct procedure and with the IRS, I think it's important for all taxpayers that they follow the right procedure. In addition, we'd like to see if they could get that letter. There's a reason why it's required and we don't think they can meet that threshold. What do you mean they can get that letter? It's their letter. Well, it is their letter, Judge, but they're going to have to go back and say we need to redo this despite the fact that it's already gone up the chain. No, all they have to do is write a letter which says it is necessary for us to look at this. We believe that there's a... Can you challenge that by saying, oh, they haven't told us why it's necessary? Is that the next litigation you're investigating? No, we've not challenged why it's necessary. Well, then I'll just write the letter and say necessary and you will have gained absolutely nothing by this litigation. And they could have written the letter at the end. They still can, right? That's right, and there's a reason why they Well, thank you very much. Mr. Fruman? May it please the Court, I represent the United States of America. I would first like to acknowledge that there was... Could you speak louder, please? That's not out of line. How's that? Just get closer. Okay. And speak up. Okay, got it. I'm first going to acknowledge that obviously the review here is plenary and there was an error in my brief and I do acknowledge that. If we are reviewing the meaning of the We believe that this is not a second inspection because we, A, do not have the records and B, although the Titan International claims that they were reviewed previously, in fact, there is nothing to show that. Although there was a prior audit, when there is an audit it doesn't necessarily mean that every in the corporation's records is reviewed and secondly just because even the documents are said to be made available doesn't mean that the IRS revenue agent reviewed every document. So it's your position that Titan's books of account were not reviewed for the 2009 year? Many of them were. However, the particular ones that are requested in the summons were not reviewed in total. A few months of them were obtained by the revenue agent and he did not review all of them. There are many items that can go into a net operating loss and we are now looking for the records with respect to their airplanes. I believe there are three of them and we do not have all of those records. I believe that available to the revenue agent currently is several months with respect to one of the information with respect to even those particular months is not available. Therefore, we do not have the records we're looking for and the affidavit that was signed by the revenue agent indicated that, that we do not have the records. It's necessary to have them. As a matter of statutory interpretation, are you arguing that this request is a first inspection of these books and records? We are, Your Honor, because each year is viewed separately and we have not reviewed the records with respect to the 2010 tax year and this taxpayer is obtaining a benefit, obviously for 2010, although it is based on 2009 and therefore we do not need a letter from the Commissioner of the IRS. We have the revenue agent indicated he needs the records, he does not have them. So a net operating loss that's calculated based on facts on the ground in 2009 because it's carried over across several taxable years creates a new right to re-inspect the same books and records? Yes, Your Honor, because we do not currently have those records. So that gets back to your point that there were a number of books that were not reviewed. Correct, Your Honor. So you need to test the viability of the net operating loss number. Absolutely correct, Your Honor. Well, right, but as a matter of statutory interpretation, I'm trying to get at what the meaning of this, you know, one inspection rule is, for lack of a better word, and it doesn't make a distinction between what the IRS actually chooses to inspect for a given taxable year. It just says that there shall be only one books of account for each taxable year unless you get permission from the Secretary. For each taxable year is what we are pointing to, Your Honor. Right, but has Titan given you the books and records for the 2010 taxable year? For 2010, yes, but not the ones that go back to 2009. Well, that's the whole point, whether they have to. Yes, that is the point, Your Honor. You've got everything from 2010, you've got... That has not become an argument, Your Honor. I'm assuming that we do. The only thing that the revenue agent requested was the records for the airplanes going back to 2009. And why do you need that? In order to determine the viability, as I believe your terminology was, the viability of the net operating loss. Yes. And why weren't those asked for in 2009? I believe that the agent did request them. I believe it was for only one airplane, Your Honor. Now why they were not asked for, that I do not know, except that when an audit is done, the agent is not directed necessarily to review every figure on the tax return. Is the goal of this to recalculate the net operating loss carryover? It's just to determine. I don't know if it's going to be recalculated or not, Your Honor. I mean, it's already been adjusted once, right? It was adjusted for 2009? I believe it was somewhat adjusted, but was not with respect to the airplanes. It was some other figures that made up the net operating loss. So you want another chance to adjust it? Possibly, Your Honor, but in order to determine what that figure is and whether it's appropriate to carry it forward and give the taxpayer this benefit, yes, we have to have the records to make the determinations whether it's accurate. And we did not have the records previously, and we don't have them now. So was the change that in the 2010 circumstance three planes are now listed as part of the net operating loss, and they weren't listed in 2009? I don't believe, in 2009, I don't believe, I believe that this therefore it did not really obtain a substantial benefit from having a net operating loss. It was only carrying it forward that was going to provide it the benefit that obviously the corporation is going to seek. So now that Titan is, I presume, in a position where it is going to have a, instead of loss, it's going to have a figure that you can subtract something from, it is now concerned about the net operating loss, and the IRS is too. Well, is the goal to recalculate the amount of the loss? I guess I'm trying to get at what the goal here is. Well, the goal is to determine whether the net operating loss figure is accurate. Possibly it's going to be recalculated. The amount of the loss? Possibly, yes. And the facts on the ground in 2009? Yes, Your Honor. Right, so how is this not a re-inspection of facts on the ground in 2009? Well, it may be a re-inspection, but it is not a re-inspection that requires a letter from the Commissioner. Why not? Because each tax year is viewed separately from each other tax year, and you only need the letter if you are going back and recalculating, reopening an audit that was previously closed. Okay. We are not going to reopen the audit. Right, you're asking us to gloss this statute with that interpretation. Yes, Your Honor. And tell me what about the text of the statute permits us to do that? It says that the books and records can be reviewed for each taxable year. When you are getting a benefit from 2009 in 2010, then your 2009 records become part of your 2010 records, because they're being used for the benefit of your 2010 tax year. And in one of our older cases, we basically say what you've said, that you can't reopen a tax return for a year that's already been inspected without notice if there are no transactions that carry into other years. Right, so the goal here was not to reopen 2009. The goal was to calculate 2010. Correct. In order to calculate 2010, there's certain records that you need from 2009. Correct. It could be by happenstance or something, but if you were going to, let's say he gets those records, he says, hey, this is the wrong number for 2009. He would have to give notice to the taxpayer, right, if they were going to reopen. Right, and we have no intention whatsoever of doing that. 2009 is closed. Yeah. Okay, thank you very much, Mr. Perlman. Mr. Rolf. I think your analysis is correct, Justice Sykes, in that the facts on the ground in 2009 were the facts on the ground. The other cases, like the Digby case, where they're looking at a depreciation schedule, they're calculating a number for year 2, the tax year 2, as opposed to year 1. So they may need to go back to records, as in... How is the net operating loss different from that? Because nothing, those numbers are all in in 2009. It's a carry-forward number. That number, it appears again on year 2. And you use that adjusted number in your 2010 and 2011 tax returns? That's right, and they've looked at that and challenged it, and this would be a second inspection. You don't want it further adjusted? Certainly don't want it further adjusted. But you have not gotten any notice that they're reopening 2009, right? And I think that that, well, we've not gotten notice of reopening, we have the representation that they don't intend to, but that's missing the point. Yeah, but you haven't gotten notice of establishing, and don't you have the burden of establishing the tax benefit on a net operating loss carry-forward? And we did that. We did that in 2009. Yeah, but you're saying the IRS can never ever look again, even though you're relying on that carry-forward in subsequent years? We're not saying that. We're saying if they want to re-look at it again, they've got to get the notice. And the Powell decision makes it very clear. Council said supports it. Well, we don't know what the other agent, if they looked at all the records. They looked at four months, and the new guy wants to look at 12. That's why Powell said you got to get the notice, because we can't have lower echelon agents coming in saying, well, Bill did this last year, but... Well, what echelon do you require? Well, we require the Secretary, the Secretary's delegate. But you admit the Secretary is not going to personally draft this letter. So what's your conception of the first echelon? Is it just the Secretary, or is it...? Well, the Secretary is a higher echelon. They're talking about lower echelon being the agents. The Secretary has delegates... Well, wait a second. There's something in between the low-level agents and the Secretary. So I'm asking you, what is your conception of the upper echelon? Is it just the Secretary? No, it's the delegates of the Secretary, and there's a specific... Wait a second. What? The Secretary issues delegation letters, which provide circumstances under which those letters can go out. I'm sorry, I didn't hear you. Delegation letters... The Secretary issues delegation orders that have qualifying conditions on when those letters will be issued, and that's what we're asking the office of the IRS here today. The Secretary designates certain of his or her subordinates, is that what you're saying? Yes. And they're authorized to write the necessary letters, is that what you're saying? Yes. Okay, thanks. Okay, well, thank you very much to both counties.